EDWARD REESE AND OTHERS v. THOMAS MEDLOCK.

It is a well settled general principle that when an agency is created by a written instrument, the nature and extent of the authority given by it must be ascertained from the instrument itself, and can not be enlarged by parol evidence of the usage of other agents in like cases, as that would be to contradict or vary the terms of the written instrument.

In some cases, especially of general or implied agencies, this general rule may be subject to modifications, whereby the usages of a particular trade or business, or of a particular class of persons, are admissible in evidence, not for the purpose of enlarging the powers of the agents employed therein, but as the means of interpreting and ascertaining those powers which are actually conferred upon such agents.

A power of attorney empowering the agent "to sell, transfer and convey" the lands of the principal, and "generally to do and perform all acts and deeds for me and in my name concerning any and all property," &c., does not authorize the agent to barter or exchange the land of his principal for other property.

Evidence that it was the custom of land agents in this State to barter or exchange for other property the land of their principals, when empowered to sell the same by power of attorney of the character above indicated, *held* to be inadmissible as contravening the legal import of the power of attorney.

When an unauthorized act of an agent purports to be under seal, and is in the name of the principal, so as to be his deed, an express ratification by the principal should, it seems, be also under seal.

But in our courts, such acts of the principal as would operate as an estoppel *in pais* will be held sufficient to confirm a contract under seal made by an agent without legal authority.

The burden of proving a ratification by a principal of an unauthorized act of his agent devolves upon the party asserting the ratification.

Assent of a principal to an unauthorized act of his agent may, in some cases, be presumed from his acquiescence in the act after notice of it; but it is a principle beyond question and of universal recognition that there can be no binding ratification without full knowledge.

The record of a deed made by an agent in the name of his principal is not constructive notice to the principal of its contents; nor that the agent in executing it had exceeded the authority conferred upon him.

But when an agent in making conveyance of his principal's land has exceeded his authority, the registration of his deed, and the subsequent possession of the land by the purchaser, are facts which, in connection with all other circumstances of the case, are proper for the consideration of the jury in determining whether the principal had, after full knowledge, ratified the act of his agent by assent thereto or acquiescence therein.

Reese  v.  Medlock.

But where the principal is not shown to have had notice or knowledge of the unauthorized act of his agent, it was error to instruct the jury that, if the principal did not disaffirm his agent's act within a reasonable time, they might presume a ratification by him of the act of his agent.

APPEAL from Burnet.    Tried below before the Hon. E. H. Vontress.

The appellants as heirs at law of Thomas Reese, deceased, brought this suit against the appellee for the recovery of a tract of land in Burnet county, and for the cancellation of a deed to said land executed to the appellee by John P. Powers, as the agent and attorney in fact of the said Thomas Reese, deceased.

The defendant, Medlock, set up title in himself by virtue of his deed from Thomas Reese by John P. Powers, as his attorney in fact, dated April 23, 1857, and recorded May 9, 1857.   In support of this deed, the defendant introduced a power of attorney from Reese to Powers, dated November 13, 1855, and recorded in Burnet county on the 22nd of November, 1855.    By this power of attorney, Reese authorized Powers "to sell, transfer and convey all lands that I may have in the said State of Texas, and generally to do and to perform all acts and deeds for me and in my name concerning any and all property that I now own in said State of Texas, and I do hereby ratify and confirm all the acts and doings of my said attorney legally done in the premises."

The deed to Medlock executed by Powers in the name of Reese purported to be made in consideration of the sum of nine hundred dollars, the payment of which was acknowledged.    But the plaintiffs alleged in their petition, and the defendant acknowledged in his answers, that the real consideration was a negro woman conveyed to Powers by Medlock, estimated at the value of nine hundred dollars.    In his answers, Medlock alleged that it was the custom of land agents in that section to convey the lands of their principal in consideration of payment in negroes, horses and other property, more convertible into money than the lands ; that immediately after the trade between himself and Powers, the latter sold the negro woman for nine hundred dollars or thereabouts ; and that the said Thomas Reese, by his acquiescence in

the sale and conveyance of the land to the defendant, had ratified and confirmed the act and deed of the said Powers, his agent.

On the trial, the defendant introduced several witnesses to prove that it was the custom of land agents acting under power of attorney similar to that given by Reese to Powers, to exchange the lands of their principals for negroes and such other property as they considered it to the interest of their principal to receive in payment, and that negro property was much more readily convertible into money than land in that part of the country. The plaintiffs objected to this testimony as inadmissible to prove authority in Powers to exchange the land; but the court overruled the objection and admitted the evidence. But in its instructions to the jury, the court withdrew the evidence of this nature from the jury, instructing them to disregard it.

It appeared in evidence that Thomas Reese died in the State of Virginia in May or June, 1858, without disaffirming the conveyance of the land made by his agent, Powers, to the defendant in May, 1857. The court instructed the jury that the power of attorney only authorized a sale of the land for money, but that if Reese or his heirs accepted or received the benefits of the sale, or acquiesced in the transfer or sale for a reasonable time, they should find for the defendant. There was evidence that Powers sold the negro woman for $875, but it did not appear that Reese or the plaintiffs, his heirs, had ever received the proceeds, or had been informed of the conveyance of the land to Medlock.

On the request of the defendant's counsel, the court instructed the jury as follows:—" That if the jury believe from the evidence that the said Thomas Reese lived for a reasonable length of time after the sale to Medlock by Powers, and during his lifetime never disaffirmed said sale, then they may reasonably calculate that Reese acquiesced in the sale of said tract of land, and they must find for the defendant."

The jury returned a verdict in favor of the defendant for six-sevenths of the land, being the extent of Thomas Reese's interest in the tract; and in favor of certain of the plaintiffs for the other seventh. The plaintiffs' motion for a new trial was overruled.

*S. H. Renick*, for the appellants.

*X. B. Saunders*, for the appellee.

MOORE, J.—It is a well settled general principle, that, when an agency is created and conferred by a written instrument, the nature and extent of the authority given by it must be ascertained from the instrument itself, and can not be enlarged by parol evidence of the usage of other agents in like cases, for that would be to contradict or vary the terms of the written instrument.    There may, however, be some qualifications and limitations properly belonging to this general rule, whereby, especially in cases of general or implied agencies, the usages of a particular trade or business, or of a particular class of persons, are properly admissible, not, indeed, for the purpose of enlarging the powers of the agents employed therein, but for the means of interpreting and rightly understanding those powers which are actually given. The power of attorney under which the agent sold the land in controversy to the defendant Medlock, did not authorize him to barter or exchange it for other property.    It can not surely be seriously insisted that there has become such a general and uniform custom or usage of trade, by agents for the sale of land in this State, in contravention to the legal import of the instrument under which they derive their authority, as to overturn and abrogate the well established rules of legal construction, by which the courts would otherwise be governed.    If, however, such was the fact, the testimony offered by the defendant falls far short of justifying the application in this case of such an exception to the general rule to which reference has been made, and the court did not err in excluding it from the jury.

There was error, however, in the charge of the court.    The jury were instructed in it that, although the power of attorney did not authorize the sale of the land except for money, yet if Reese lived a reasonable time after the sale, and during his lifetime did not disaffirm the sale, they might infer that he acquiesced in it, and should find for the defendant.    It is evident, that the verdict of the jury must have been controlled by this charge.    Under it they could not have found a verdict otherwise than as they did.

It is truly said that a subsequent ratification, except in a few cases of an isolated and peculiar character, of an act done by another *as an agent*, is equivalent to a prior authority. Where, however, the act of the agent purports to be under seal, and in the name of the principal, so as to be his deed, it has been held, generally in common law courts, that the ratification must also be by an instrument under seal. Although this is probably the correct rule with reference to express ratifications as evidence of legal title, or to such acts of recognition and acquiescence as operate merely as evidence of assent, it can hardly be doubted that such acts as would operate as an estoppel *in pais* would be held sufficient in our courts to confirm a contract under seal made by an agent without legal authority. (1 American Lead. Ca., 574.) But unquestionably the burthen of proving this ratification of the unauthorized act of the agent, devolves upon the party asserting it. Assent may in some cases be presumed from acquiescence after notice. But it is a principle too clear for doubt or question, and of universal recognition, "that there can be no binding ratification, without full knowledge." (1 American Lead. Ca., 574; Story on Agency, sec. 90.) Nor is the fact of the record of the deed from the agent, as insisted by counsel, constructive notice to the principal of its contents, much less will it give him notice that his agent has exceeded the limit of his authority. Even an inspection of the deed would not inform him of this fact. The most that can be said with reference to the registration of the deed from the agent, and subsequent possession of the land by the purchaser, is, that these are facts, which in connection with all the other circumstances connected with the case, might be considered by the jury in determining whether the principal had, after full knowledge, ratified the act of his agent. The charge of the court, however, makes the delay of the principal for such length of time merely as the jury should conclude to be reasonable, to disapprove the act of the agent, although he may not have been notified of it, conclusive evidence of ratification.

The judgment is reversed and the cause remanded.

Reversed and remanded.